## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

JOHN FARLEY, on behalf of himself and all
others similarly situated,

            Plaintiff,

  v.

APPLE INC.,

            Defendant.

**COMPLAINT -- CLASS ACTION**

DEMAND FOR JURY TRIAL

Case No. 23-cv-254

Plaintiff John Farley ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action suit for damages and equitable relief against Defendant Apple Inc. ("Defendant" or "Apple") and alleges the following based upon personal information and investigation, the investigation of his counsel, and on information and belief:

## NATURE OF THE ACTION

1.    This case relates to a flagrant violation of consumer privacy. Quite simply, Apple records consumers' personal information and activity on its consumer mobile devices and applications ("apps"), even after consumers explicitly indicate through Apple's mobile device settings that they do not want their data and information shared. This activity amounts to an enormous wealth of data that Apple collects and uses for its financial gain.

2.    Consumers care about keeping their data private and are demanding more control over their data. Consumers are also becoming increasingly concerned that their private information is being used without their knowledge or permission.

3. As privacy concerns have grown, Apple has sought to position itself as a leader by touting how its mobile devices allow users to control the information they share. For example, the "Apple Privacy Policy" states:

> At Apple, we respect your ability to know, access, correct, transfer, **restrict the processing of**, and delete your personal data.[1]

(emphasis added).

4. The Apple App Store "User Privacy and Data Use" page similarly declares:

> The App Store is designed to be a safe and trusted place for users to discover apps created by talented developers around the world. Apps on the App Store are held to ***a high standard for privacy***, security, and content because ***nothing is more important than maintaining users' trust.***[2]

(emphasis added).

5. Apple even provides specific instructions to users to explain how to control what data Apple collects. Apple tells users to turn off "Allow Apps to Request to Track" if settings if they so wish.

6. In addition, Apple makes an outright promise in its mobile devices' settings: Apple states that it will "disable [the sharing of] Device Analytics altogether" if a consumer toggles or turns off "Share iPad Analytics" on an iPad, or similar settings on other Apple mobile devices, like the iPhone.[3]

7. Yet, Apple does not honor users' requests to restrict data sharing.

---

[1] https://www.apple.com/legal/privacy/pdfs/apple-privacy-policy-en-ww.pdf (last updated December 22, 2022)

[2] https://developer.apple.com/app-store/user-privacy-and-data-use/

[3] If a consumer has an Apple Watch paired to their iPhone, they must instead turn off the setting for "Share iPhone and Watch analytics" for the same effect. Hereinafter, this setting, across devices, will be referred to as "Share [Device] Analytics."

8.    A recent test performed by two independent app developers at the software company Mysk revealed that even when consumers actively change their "privacy settings" and take Apple's instructions to protect their privacy, Apple still records, tracks, collects, and monetizes consumers' analytics data, including browsing history and activity information. These experts and their testing further showed that Apple continues to access consumers' app usage, app browsing communications, and personal information in its proprietary apps, including the App Store, Apple Music, Apple TV, Books, and Stocks, even when consumers have affirmatively turned off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" on their privacy controls.

9.    *Gizmodo* broke the story on the issue on November 8, 2022.[4] The issue has been reported in multiple news outlets since Gizmodo's report, including The Verge, Engadget, and Fox News.[5] As of the date of this filing, Apple still has not responded to or publicly refuted the reports.

10.   Apple's practices deceive consumers. Its practice of collecting the data of users who have specifically followed Apple's instructions to disable data sharing violates, *inter alia,* New York General Business Law §§ 349 and 350.

11.   Plaintiff is an individual whose mobile app usage was tracked by Apple after he had affirmatively elected to turn off the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" options.

---

[4] https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558.

[5] https://www.theverge.com/2022/11/21/23471827/apple-app-store-data-collection-analytics-personal-info-privacy; https://www.engadget.com/apple-phone-usage-data-not-anonymous-researchers-185334975.html; https://www.foxnews.com/tech/apple-iphone-data-not-as-anonymous-company-says-researchers.

12.     Apple, through its tracking and hoarding of data, collected and monetized consumer information without Plaintiff's and similarly situated consumers' consent.

13.     Plaintiff seeks damages and equitable relief on behalf of himself and all other similarly situated Apple device users in New York (the "Class"), arising from Apple's knowing and unauthorized copying, taking, use, and tracking of consumers' communications and activity, and its knowing and unauthorized invasion of consumer privacy.

## THE PARTIES

14.     Plaintiff John Farley is a resident of Shirley, New York. He owns an iPad. Previously, Mr. Farley owned an iPad Air and iPad Air 2. Plaintiff Farley regularly accesses Apple apps including the App Store, Apple Music, Maps, and Weather. Immediately after purchasing the iPad, during settings setup, Plaintiff turned off the "Allow Apps to Request to Track" and "Share iPad Analytics" options. Apple has nevertheless accessed his data while these features were turned off. An image of Plaintiff's iPad with these features turned off are below.



15.     Defendant Apple Inc. is incorporated in California and maintains its principal place of business at One Apple Park Way, Cupertino, CA 95014.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and members of the proposed Class are citizens of a different state (New York) than the Defendant (California).

17.     This Court has personal jurisdiction over Defendant Apple because Defendant committed the tortious acts alleged herein in New York, regularly conducts business in this District, has extensive contacts with this forum, and because a substantial part of the events or omissions giving rise to the claims asserted occurred in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, Defendant transacts substantial business in this District, and Plaintiff resides in this district.

19.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

**A.      Consumers have a reasonable expectation of privacy on their mobile devices.**

20.     More than 1 billion consumers currently use iPhones, and over 1.9 billion iPhones have been sold. Apple's iPhones make up over 23% of the global market share for smart phones. iPads make up an even larger share of their market. In the third quarter of 2022, Apple sold 142 million iPads, totaling 38% of the tablet market.

21.     Mobile device users reasonably expect their activity will not be shared without affirmative consent.

22.     Tellingly, when Apple announced its operating system update in 2021 (i.e., iOS and iPadOS 15.2), it introduced App Tracking Transparency, purportedly requiring all app developers to ask users for affirmative consent before tracking their activity through third-party apps and websites.[6] In the United States, 94% of users said no.[7] "[W]hen given the choice, people would rather not be tracked."[8]

23.     Apple has attempted to differentiate itself from its competitors by playing up its commitment to privacy.

24.     For instance, in an April 2021 white paper describing its privacy practices for iPads and iPhones, including its App Tracking Transparency framework, Apple stated that it 'believes that privacy is a fundamental human right" and listed its privacy principles, including "Making sure that users know what data is shared and how it issued, and that they can exercise control over it":[9]

---

[6] Jason Aten, *Apple's iOS 15.2 Is a Major Privacy Update That Lets You See How Apps Are Tracking You. It's Very Bad News for Facebook*, Inc. (Dec. 14, 2021), https://www.inc.com/jason-aten/apples-ios-152-is-a-major-privacy-update-that-lets-you-see-how-apps-are-tracking-you-its-very-bad-news-for-facebook.html.; *see also* https://support.apple.com/en-us/HT212958; https://support.apple.com/en-us/HT212025.

[7] Rachel Kraus, *After update, only 4 percent of iOS users in U.S. let apps track them*, Mashable (May 7, 2021), https://mashable.com/article/ios-14-5-users-opt-out-of-ad-tracking.

[8] *Id.*

[9] https://www.apple.com/privacy/docs/A_Day_in_the_Life_of_Your_Data.pdf

## Apple's privacy principles

Apple believes that privacy is a fundamental human right. We design our products and services guided by our four key privacy principles:



**Data Minimization**
Collecting only the minimum amount of data required to deliver what you need for a given service.



**On-Device Processing**
Processing data on the device, wherever possible, rather than sending it to Apple servers, to protect user privacy and minimize data collection.



**User Transparency and Control**
Making sure that users know what data is shared and how it is used, and that they can exercise control over it.



**Security**
Hardware and software working together to keep data secure.

25.    Recently Apple launched a world-wide ad campaign, erecting 40-foot billboards featuring the iPhone and a simple slogan, "Privacy. That's iPhone."[10]

---

[10] *Apple and Privacy*, Apple Insider, https://appleinsider.com/inside/apple-and-privacy.



26.    Other    billboards    are    similarly    plastered    with    Apple's    purported

commitment   to   privacy.   "What   happens   on   your   iPhone,   stays   on   your   iPhone,"

announced one billboard in Las Vegas.[11] "Your iPhone knows a lot about you. But we

don't," announced another in New York.[12]

---

[11] Hamza Shaban, *Apple stars at giant tech confab CES — without actually being there*, Washington Post (January 7, 2019) https://www.washingtonpost.com/technology/2019/01/07/apple-burns-google-giant-billboard-touting-privacy-ces.

[12] https://www.alamy.com/a-billboard-on-the-side-of-a-building-in-midtown-manhattan-on-tuesday-july-9-2019-informs-viewers-of-the-privacy-afforded-by-using-apple-devices-richard-b-levine-image260045682.html.



27.     In one Apple video advertisement in the same privacy campaign, a consumer stumbles upon a "data auction" as the auctioneer pretends to offer up the various data that apps have collected about the consumer. "Her location data," the auctioneer says as a map is placed on the block and offered to the audience. "It's not data, it's commerce! Do I hear 600? 620?" At the end, text on the screen says, "It's your data. iPhone helps keep it that way."[13]

28.     In another Apple advertisement, the narrator says, "Your information is for sale. You have become the product." After introducing Apple's privacy options, the

---

[13] https://youtu.be/NOXK4EVFmJY.

narrator says, "Whatever you choose is up to you... App Tracking Transparency. A simple new feature that puts your data back in your control."[14]

29.     More broadly, consumers are worried about their privacy online. According to Cisco, 86% of consumers say they care about data privacy and want more control over their data.[15] Nearly half of those surveyed said they felt unable to protect their personal data—mainly because companies are not transparent about how they use consumer data.[16] A study by Pew Research Center showed that 79% of Americans are concerned about the way their data is being used by companies.[17]

30.     Industry observers have introduced the concept of "surveillance capitalism," speaking to "consumers' increasing awareness that their data is bought, sold, and used without their consent—and their growing reluctance to put up with it."

31.     In sum, while consumer data becomes more valuable to businesses, consumers are becoming more protective about businesses obtaining that data.[18]

---

[14] https://youtu.be/Ihw_Al4RNno.

[15] *Consumer Privacy Study: Building Consumer Confidence Through Transparency and Control*, Cisco (Sept. 29, 2021), https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-cybersecurity-series-2021-cps.pdf.

[16] *Id.*

[17] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, Pew Research Center, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information.

[18] Hossein Rahnama & Alex "Sandy" Pentland, *The New Rules of Data Privacy*, Harvard Business Review (Feb. 25, 2022), https://hbr.org/2022/02/the-new-rules-of-data-privacy.

**B.   Apple secretly collects consumers' personal information and tracks their mobile device and app activity.**

32.   Apple surreptitiously tracks a wide range of consumer activity.

33.   Consumer "actions" that Defendant tracks include: (a) how a user initially found an app; (b) the duration a user looked at an app in the app store; (b) the user's searches in the app store; (c) the advertisements displayed to each user; and (d) which apps the users clicked on.

34.   Not only does the App Store send to Apple this individualized information about users' activities, it also shares the types of device used, and even data regarding screen resolution and keyboard settings.

35.   Apple is also able to track user activity across its various apps, as the data analytics it collects share user ID numbers.

36.   For instance, Apple "Stocks" shares a user's private information relating to a user's investment activities or preferences. It shares with Apple which stock the user is following or viewing. Apple even collects time-stamps on when the user is viewing certain stocks and engaging with the Stocks app.

37.   In addition, Apple collects the news articles that users see within their mobile device.

38.   Despite branding its products as designed to respect and protect users' privacy, Apple ignores users' expressed preferences to keep their data private for their own profit. Apple misappropriates users' information to make its advertising algorithms more effective, which, in turn, generates Apple more revenue from advertisers.

39.     In short, Apple cannot justify collecting private user data when users expressly direct Apple not to do so by turning off "Allow Apps to Request to Track" and/or "Share [Device] Analytics."

40.     Apple has not disclosed to users that it was continuing to track their private data, in direct contravention of the users' requests—made using the very steps Apple instructs them to follow— that Apple not do so.

41.     Because of Apple's deception and knowing concealment, any applicable statute of limitations has been tolled until only recently, when Plaintiff discovered his data was being tracked.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of himself and on behalf of the following proposed class:

> All individuals who, while using an Apple mobile device in New York, had their information tracked or used by Apple after turning off "Allow Apps to Request to Track," "Share iPad Analytics," "Share iPhone Analytics" and/or any other similar setting on an Apple mobile device that purported to stop Apple from collecting mobile app activity.

43.     Excluded from the proposed Class are Apple, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Apple has a controlling interest.

44.     Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

45.     The claims of all class members derive directly from a single course of conduct by Apple. Apple has engaged and continues to engage in uniform and standardized conduct toward the putative class members.

46.     Certification of Plaintiff's claims is appropriate because the elements of each of Plaintiff's claims can be proven (or disproven) on a class-wide basis using the common evidence.

47.     Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

48.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Class are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many hundreds of thousands of members, if not more. The precise number of class members, and their addresses, are unknown to Plaintiff at this time but can be ascertained from Defendant's records.

49.     **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a)     whether Defendant collected or tracked mobile user information and data without the class members' consent;

(b)     whether Plaintiff and the Class are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages, and if so in what amount; and

(c)     whether Plaintiff and the Class are entitled to injunctive, declaratory relief, or other equitable relief.

50.     **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiff and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiff and the class members. Plaintiff and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

51.     **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class members, and he has retained counsel competent and experienced in complex class action, business competition, and consumer privacy litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the class members.

52.     **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford

such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

53.     **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b)     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Violation of the New York Deceptive and
### Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349
### (On Behalf of Plaintiff and the Class)

54.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

55.     NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

56.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section.  The court may award reasonable attorneys' fees to a prevailing plaintiff.

57.     Defendant violated NY GBL § 349 by representing that its mobile devices enable users to choose settings that would stop Defendant from collecting or tracking their private data—a feature they do not have—and engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about privacy settings on Defendant's mobile devices.

58.     Defendant's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff and the Class.

59.     Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the Class will continue to damage both Plaintiff and the Class unless enjoined by this Court.

## SECOND CAUSE OF ACTION

### False Advertising in Violation of
### N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiff and the Class)

60.     Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

61.     By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff and the Class, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

62.     Defendant caused to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications, statements that were untrue or misleading, and which it knew to be untrue or misleading.

63.     Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large.  Consumers were and continue to be exposed to Defendant's material misrepresentations.

64.     Pursuant to NY GBL § 350-e, Plaintiff and the Class seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive

relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

65.    Defendant's deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiff and the Class.

66.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the Class will continue to damage both Plaintiff and the Class unless enjoined by this Court.

## THIRD CAUSE OF ACTION

### Breach of Implied Contract
**(On Behalf of Plaintiff and the Class)**

67.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

68.    Plaintiff and Apple entered into a contract for the sale of an Apple mobile device.

69.    As part of that agreement, and by providing consumers with the ability to turn off the "Allow Apps to Request to Track," "Share iPad Analytics," and similar settings, Apple impliedly promised that it would not continue to track consumer use once a given consumer had turned off that feature.

70.    By continuing to track consumers who turned off these settings, Apple breached that implied contract.

71.    Apple's breach of this implied contract caused damages to Plaintiff and similarly situated class members, including nominal damages and other damages to be determined at trial.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

72.    Plaintiff incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein. This claim is pled in the alternative to the contract-based claim.

73.    Plaintiff and class members conferred a tangible and material economic benefit upon Defendant. Despite branding itself as a company that respects privacy and offers consumers the ability to prevent data tracking, Defendant nonetheless collected Plaintiff's and the class members' private data.

74.    Defendant was unjustly enriched thereby, using Plaintiff's and the class members' data to enhance advertising revenue and its products.

75.    Defendant's retention of the benefit conferred upon them by Plaintiff and the Class would be unjust and inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, prays for relief and judgment against Defendant as follows:

A.    certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and designating Plaintiff's counsel as Class Counsel;

B.    declaring that Defendant's conduct violates the laws referenced herein;

C.    finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      awarding Plaintiff and the Class compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

E.      awarding Plaintiff and the Class appropriate relief, including actual, nominal and statutory damages;

F.      awarding Plaintiff and the Class punitive damages;

G.      awarding Plaintiff and the Class civil penalties;

H.      granting Plaintiff and the Class declaratory and equitable relief, including restitution and disgorgement;

I.      enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

J.      awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

K.      awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowable by law;

L.      awarding pre-judgment and post-judgment interest; and

M.      granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 13, 2023

By: /s/ *Raphael Janove*
Raphael Janove
Adam Pollock
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Rafi@PollockCohen.com
Adam@PollockCohen.com

Tina Wolfson (NY Bar No. 5436043)
**AHDOOT & WOLFSON, PC**
125 Maiden Lane, Suite 5C
New York, NY 10038
(310) 474-9111
twolfson@ahdootwolfson.com

Andrew Ferich (*pro hac vice*
forthcoming)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
(310) 474-9111
aferich@ahdootwolfson.com

Jonathan Shub (*pro hac vice*
forthcoming)
Benjamin F. Johns (*pro hac vice*
forthcoming)
**SHUB LAW FIRM LLC**
134 Kings Highway E.
Haddonfield, NJ 08033
(856) 772-7200
jshub@shublawyers.com
bjohns@shublawyers.com

*Attorneys for Plaintiff*